FILED
U.S. DISTRICT COURT

2008 JUL 11 PM 1:26

CLERK [signature]
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| VERNELL WOMACK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 307-042 |
| | ) | |
| S.M. SIKES, Warden of Montgomery State Prison, | ) ) | |
| | ) | |
| Defendant. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate currently incarcerated at Hays State Prison, in Trion, Georgia, commenced this civil action pursuant to 42 U.S.C. § 1983.[1] Plaintiff is *pro se* and proceeding *in forma pauperis*. This matter comes before the Court on Defendant's motion to dismiss, which the Court converted to a motion for summary judgment.[2] (Doc. no. 12). Plaintiff opposes Defendant's motion. (Doc. no. 13). Plaintiff has also filed a motion for

---

[1] At the time relevant to the claims alleged in this case, Plaintiff was incarcerated at Montgomery State Prison ("MSP") in Mt. Vernon, Georgia.

[2] On April 1, 2207 the Court entered an Order providing the parties with a notice that Defendants' pre-answer motion to dismiss was being converted to a motion for summary judgment. (Doc. no. 21). This April 1st Order explained the consequences of a motion for summary judgment and provided each party, if necessary, the opportunity to file additional materials. (Id.). Accordingly, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (*per curiam*), were satisfied.

summary judgment (doc. no. 23), to which Defendant has filed a response (doc. no. 29). For the reasons stated below, the Court **REPORTS** and **RECOMMENDS** that Defendant's motion for summary judgment (doc. no. 12) be **GRANTED** as to exhaustion, that Plaintiff's motion for summary judgment on the merits (doc. no. 23) be **DENIED**, that Plaintiff's complaint be **DISMISSED** without prejudice, and that an appropriate final judgment be **ENTERED** in favor of Defendant.

## I. FACTS

Plaintiff asserts in his complaint that on April 5, 2006, while incarcerated at MSP, he was placed in administrative segregation because he was unable to perform physical labor. (Doc. no. 1, pp. 1, 4). Following his stint in administrative segregation, Plaintiff alleges that he was subjected to numerous fabricated disciplinary reports. (Id. at 5). Plaintiff asserts that he informed Defendant Sikes, the Warden of MSP, verbally and in writing, about this "harassment." (Id.). However, according to Plaintiff not only did Defendant Sikes fail to take action, but the situation was allowed to intensify such that Plaintiff was threatened and physically assaulted by some MSP officers at a disciplinary report hearing ("DRH") on May 10, 2006. (Id.). Finally, according to Plaintiff, as a result of this alleged assault, he received a broken tooth and facial bruises. (Id.). Thus, Plaintiff brings this Eighth Amendment claim against Defendant for the injuries he purportedly sustained in the May 10, 2006 assault. In support of his allegations, Plaintiff has submitted several documents, statements and/or letters he sent to various people within the Georgia Department of Corrections concerning events of the DRH. (Doc. no. 1, pp. 7-17; doc. no. 19; and doc. no. 24).

Defendant filed a motion seeking to dismiss Plaintiff's claims asserting: (1) Plaintiff has failed to exhaust his administrative remedies; (2) Plaintiff cannot bring a suit against Defendant for monetary damages; (3) Plaintiff has failed to state a valid Eighth Amendment claim based upon failure to protect; and (4) Plaintiff has improperly tried to bring a claim of vicarious liability against Defendant. (Doc. no. 12, p. 5). In support of his dispositive motion, Defendant has filed, *inter alia*, the affidavit of Shevondah Fields, the Georgia Department of Corrections ("GDOC") Manager of the Office of Investigations and Compliance (doc. no. 12, pp. 26-31), Plaintiff's Grievance History (doc. no. 12, Attach. 1), GDOC Standard Operating Procedure ("SOP") IIB05-0001 (doc. no. 12, Attach. 2), Plaintiff's Grievances (doc. no. 29, Ex. 7), and the affidavit of Dianne Dees, GDOC Chief Counselor and Grievance Coordinator at MSP (Id.).

### A.   The Administrative Grievance Process

Before assessing whether Plaintiff has complied with 42 U.S.C. § 1997e(a), it will be helpful to explain the grievance procedure used in the Georgia state prison system. Under SOP IIB05-0001 § VI(B), once an inmate has unsuccessfully attempted to resolve a complaint through discussion with the staff involved, the administrative remedies procedure commences with the filing of an informal grievance. The inmate has ten (10) calendar days from "the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the informal grievance. SOP IIB05-0001 § VI(B)(5). The timeliness requirements of the administrative process may be waived upon a showing of good cause. See id § VI(C)(2) & (D). The SOP requires that an inmate be given a response to his

3

informal grievance within ten (10) calendar days of its receipt by the inmate's counselor; the informal grievance procedure must be completed before the inmate will be issued a formal grievance. Id § VI(B)(12)-(13).

If unsatisfied with the resolution of his informal grievance, an inmate must complete a formal grievance form and return it to his counselor within five (5) business days of his receipt of the written resolution of his informal grievance. Id. § VI(C)(2). Once the formal grievance is given to the counselor, the Warden/Superintendent has thirty (30) calendar days to respond. Id. § VI(C)(14). If the inmate is not satisfied with the Warden's response to the formal grievance, he has five (5) business days from the receipt of the response to file an appeal to the Office of the Commissioner; the Office of the Commissioner or his designee then has ninety (90) calendar days after receipt of the grievance appeal to respond. Id. § VI(D)(2),(5). The grievance procedure is terminated upon the issuance of a response from the Commissioner's Office. Id.

### B. Administrative Remedies

With regard to Plaintiff's utilization of the administrative grievance process following the incident, Defendant provided the affidavit of Ms. Dees. (Doc. no. 29, Ex. 7, Dees Aff.). Ms. Dees, the MSP grievance coordinator, stated that as part of her duties at the prison she was responsible for ensuring that offenders receive grievance forms when requested and that grievance procedures are conducted in accordance with the Georgia Department of Corrections SOP. (Id. ¶ 4). In addition, Defendant provided the affidavit of Ms. Fields. (Doc. no. 12, pp. 26-31). Ms. Fields stated that all Georgia Department of

Corrections' prisons maintain a grievance process available to all offenders pursuant to SOP IIB05-0001 § VI, an administrative grievance process that is available to all inmates. (Id.). Pursuant to SOP IIB05-0001 § VI, Ms. Fields stated that for a grievance to be considered timely, it must have been filed no later than ten (10) days of the grieved event. (Id. ¶ 8).

Ms. Fields noted that a review of Plaintiff's Department files shows that at the time Plaintiff commenced the above-captioned case he had not properly followed the grievance procedure. (Id. ¶ 12). Ms. Fields further noted that the incident dates that Plaintiff refers to in his complaint are April 5, 2006 and May 10, 2006, however Plaintiff did not file grievances relating to those dates. Nor did Plaintiff file any informal grievances within the 10 day period of the incidents dates allowed by the grievance procedure. (Id. ¶ 13). Thus, Defendant asserts that he is entitled to summary judgment on Plaintiff's Eighth Amendment claim as a matter of law because, *inter alia*, Plaintiff did not exhaust his administrative remedies. (Doc. no. 12).

Although Plaintiff admits that he did not exhaust his administrative remedies, he also alleges in conclusory fashion that MSP staff members prevented him from filing grievances; when he did attempt to file grievances, he claims they were denied as non-grievable issues. (Doc. nos. 13, 17, 23). Plaintiff argues that administrative remedies were not available to him because "staff members at MSP hampered his every attempt to file an informal grievance pertaining to the guards' brutality." (Doc. no. 13, p. 4). Plaintiff notes:

> In fact, after continuous requests for several days the Plaintiff still didn't get a grievance form. And when staff finally presented the form, it was done away with after the Plaintiff filed it; and all subsequent forms filed were either rejected or denied if the grievances expressed anything about the excessive force by the officers.

(Id.). Thus, Plaintiff contends that prison staff at MSP disregarded their duties under SOP IIB05-0001 § VI.[3] However, relying on the sworn affidavits of Ms. Dees and Ms. Fields, Defendant flatly contradicts these claims and maintains that nothing prevented Plaintiff from utilizing the grievance process. Defendant has the better argument.

## II. DISCUSSION

A.  **Summary Judgment Standard**

Summary judgment is appropriate only if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Applicable substantive law identifies which facts are material in a given case.[4] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When seeking summary judgment, the movant must show, by reference to materials on file, that there are no genuine issues of material fact to be decided at a trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). If the burden of proof at trial rests

---

[3]Importantly, Plaintiff simply relies on his own self-serving conclusory allegations submitted in his response to Defendant's dispositive motion. Plaintiff has not submitted any affidavits. The Court cautioned Plaintiff that any factual assertions made in the affidavits of the party moving for summary judgment had to be contradicted by the non-moving party through submissions of affidavits or other documentary evidence. Fed. R. Civ. P. 56(e) (see also doc. no. 21, p. 4). Although Plaintiff has submitted his exhibits, they do not support his bare allegations that the staff at MSP prevented him from exhausting his administrative remedies.

[4]The Court is mindful that for purposes of summary judgment, only disputes about material facts are important. That is, "[t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

6

with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*). On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark, 929 F.2d at 606-08 (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Merely stating that the non-moving party cannot meet its burden at trial is not sufficient. Clark, 929 F.2d at 608. Evidence presented by the movant is viewed in the light most favorable to the non-moving party. Adickes, 398 U.S. at 157.

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark, 929 F.2d at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255 (quoting Adickes, 398 U.S. at 158-59). A genuine issue of material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

7

## B. Plaintiff's Failure to Exhaust Available Administrative Remedies

Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's mandatory exhaustion requirement applies to all federal claims brought by any inmate. Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998). Simply put, as the plain language of § 1997e(a) makes clear, if an administrative remedy is "available," it must be exhausted. 42 U.S.C. § 1997e(a); see also Alexander, 159 F.3d at 1326 (explaining that under PLRA courts are "to focus solely on whether an administrative remedy program is 'available'").

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. Johnson v. Meadows, 418 F.3d 1152, 1159 (11th Cir. 2005), *cert. denied*, 126 S.Ct. 2978 (2006). Put plainly, "a Georgia prisoner 'must timely meet the deadlines or the good cause standard of Georgia's administrative grievance procedures.'" Salas v. Tillman, 162 Fed. Appx. 918, 920 (11th Cir.

8

Jan. 17, 2006) (quoting Johnson, 418 F.3d at 1155); see also Harper v. Jenkin, 179 F.3d 1311, 1312 (11th Cir. 1999) ("Since appellant has not sought leave to file an out-of-time grievance, he cannot be considered to have exhausted his administrative remedies.").

In this case, as described above, Plaintiff argues that this action should not be dismissed for failure to properly exhaust administrative remedies because he was prevented from filing grievances. However, Defendant, relying on the sworn affidavits of Ms. Dees and Ms. Fields, and Plaintiff's grievance history, flatly contradicts these claims and maintains that nothing prevented Plaintiff from utilizing the grievance process.

The Court notes that factual determinations regarding exhaustion (or lack thereof) under § 1997e(a) often pose problems for the district courts. In the instant case, the Court is faced with a "swearing match" between prison officials and an inmate regarding whether the actions of prison staff rendered administrative remedies "unavailable." As a general rule, "[i]ssues of credibility and the weight afforded to certain evidence are determinations appropriately made by a finder of fact and not a court deciding summary judgment." McCormick, 333 F.3d at 1240 n.7.

Nevertheless, the Eleventh Circuit has recently approved that a district judge may act as a factfinder in resolving whether an inmate has exhausted his non-judicial remedies. Bryant v. Rich, ---- F.3d ---- 2008 WL 2469405, at *3 (11th Cir. June 20, 2008) (citing Wyatt v. Terhune, 315 F.3d 1108, 1119-20 (9th Cir. 2003). Additionally, as the Honorable B. Avant Edenfield, United States District Judge, has explained in an analogous case:

> Congress enacted § 1997e(a) of the [PLRA] to *curtail* inmate litigation, not create an entire new layer of jury trials in the very overburdened court system that PLRA was meant to relieve. To hold that

> Priester is entitled to a jury trial on this preliminary issue [whether administrative remedies were "available"] would open the floodgates to even more litigation. Were this Court to hold otherwise, how many *convicted criminals*--in a legal world where civil-case originating perjury prosecutions are at best a rarity--would *not* then claim that their guards refused to avail them grievance forms or otherwise did something to excuse the exhaustion requirement? How many inmates like Priester, after pointing to the ensuing swearing match, would *not* then demand a jury trial on this *preliminary* issue, and thereby create a *second* litigation layer on top of the "merits" layer?
> . . . . [T]he Court concludes that . . . . exhaustion constitutes a preliminary issue for which no jury trial right exists, and therefore judges can and should make credibility determinations on exhaustion-excusal issues.

Stanley v. Rich, CV 605-075, 2006 WL 1549114, at *2-3 (S.D. Ga. June 1, 2006), *appeal docketed* 06-13502 (11th Cir. June 22, 2006) (quoting Priester v. Rich, CV 605-071, doc. no. 41, pp. 6-7 (S.D. Ga. Apr. 4, 2006), *aff'd*, No. 06-12290 (11th Cir. June 20, 2008)). Similarly, the Supreme Court has explained that "discredited testimony" cannot be relied upon to resist summary judgment. See Anderson, 477 U.S. at 256-57. Thus, to the extent Plaintiff relies upon his own self-serving allegations, the Court properly considers whether a "reasonable juror would undertake the suspension of disbelief necessary to credit the allegations." Jeffreys, 426 F.3d at 555.

Here, the Court concludes that Plaintiff's interference argument fails. In this instance, the Court finds that Plaintiff has not shown that any prison officials at MSP prevented or inhibited him from exhausting administrative remedies prior to filing suit. Plaintiff relies entirely upon his own unsworn self-serving accusations. Under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'"[5] Johnson, 418 F.3d at 1155, 1156.

---

[5]Whether that possibility may be slight is irrelevant. The Eleventh Circuit has explained that, even if the likelihood of obtaining administrative relief is akin to that of being

10

Likewise, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326. As the Court has noted *supra*, the plain language of § 1997e(a) forbids any inquiry except into whether administrative remedies are "available."

In order to demonstrate that administrative remedies were unavailable Plaintiff must point to specific facts showing that prison staff inhibited him from utilizing the grievance process. See Boyd v. Corr. Corp. of Am., 380 F.3d 989, 998 (6th Cir. 2004) ("nonspecific allegations of fear" and "subjective feeling[s] of futility" no excuse for failure to exhaust administrative remedies). Plaintiff cannot show that administrative remedies were unavailable simply by making a blanket allegation without any supporting evidence. Of course, those federal courts to consider the issue have held that threats of violent reprisal can, under certain circumstances, render administrative remedies "unavailable" or otherwise justify an inmate's failure to pursue them. See, e.g., Hemphill v. New York, 380 F.3d 680, 686-91 (2d Cir. 2004). More generally, courts have held that prison officials may, as a

---

struck by lightning, an inmate must still exhaust administrative remedies. See Alexander, 159 F.3d at 1325 (quoting Irwin v. Hawk, 40 F.3d 347, 349 (11th Cir. 1994) ("No doubt denial *is* the likeliest outcome, but that is not sufficient reason for waiving the requirement of exhaustion. Light[]ning may strike; and even if it doesn't, in denying relief the [administrative authority] may give a statement of its reasons that is helpful to the district court in considering the merits.")).

11

result of their own conduct, become equitably estopped from relying upon § 1997e(a).[6,7]

Of particular note, in Miller v. Tanner, 196 F.3d 1190, 1194 (11th Cir. 1999), the Eleventh Circuit explained that prison officials cannot "unequivocally" tell an inmate that resort to administrative remedies is "precluded" or "even prohibited" and then rely upon § 1997e(a) to argue that the inmate failed to exhaust available administrative remedies. Taken together, these cases stand for the simple proposition that prison officials should not benefit from conduct which inhibits an inmate from properly exhausting administrative remedies. That principle of law does not alter the key inquiry--whether administrative remedies were actually "available" to Plaintiff prior to the filing of the instant suit. As set forth above, Plaintiff has failed to demonstrate that administrative remedies were unavailable following the alleged excessive use of force.

Admittedly, the Eleventh Circuit has expressed concern when prison officials tell a prisoner "unequivocally" that further resort to the administrative process is "futile, even prohibited." Miller, 196 F.3d at 1194. However, the instant case is far removed from the Eleventh Circuit's concerns in Miller. First, in Miller the plaintiff relied upon actual documentary evidence proving that he had been instructed by prison officials that an administrative appeal was prohibited. Id. In contrast, Plaintiff has presented no evidence

---

[6] See, e.g., Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004) (*per curiam*); Ziemba v. Wezner, 366 F.3d 161, 163 (2d Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001); Wright v. Hollingsworth, 260 F.3d 357, 358 n.2 (5th Cir. 2001).

[7] To the extent Plaintiff is arguing that Defendants should be estopped from relying on § 1997e(a) because of their own misconduct, it is his burden to establish his entitlement to this equitable remedy. See Lewis v. Washington, 300 F.3d 829, 834 (7th Cir. 2002).

save his own self-serving statements, which are squarely contradicted by the sworn affidavits of Ms. Dees and Ms. Fields.

More importantly, Plaintiff's credibility is harmed by the evidence, which shows that Plaintiff repeatedly availed himself of the grievance process both before and after the May 10, 2006 assault alleged in the complaint.[8] Of particular note, the record reflects that Plaintiff filed an informal grievance at the end of April 2006 that addressed his medical treatment for headaches, back pain, and dry skin; upon its denial he then requested a formal grievance which he filed on May 15, 2006 only five days after the alleged incident. (Doc. no. 29, Ex. 7). In addition, Plaintiff requested an informal grievance addressing his need to be treated by a "mental health doctor," which he filed on or about June 6, 2006; followed by a formal grievance on June 27, 2006. (Id.).

Similarly, Plaintiff's own exhibits show that he repeatedly availed himself of the grievance process. (See doc. no. 19, Exs. 4, 9, 13). Plaintiff's exhibits also include several disciplinary report appeals. (Doc. no. 19, Exs. 2, 11, 12). Plaintiff contends that staff members at MSP prevented him from exhausting his administrative remedies because each

---

[8]To the extent Plaintiff asserts that he exhausted his administrative remedies at another facility, the Court notes that Plaintiff does not provide any explanation as to how he exhausted these administrative remedies. (Doc. no. 30). In addition the Court notes that even if Plaintiff submitted grievances on the issue before the Court, the grievances would have been untimely. To this end, nowhere in any of his filings does Plaintiff proffer that he requested permission to file this out of time grievance. Finally, the Court notes that Ms. Fields acknowledged that Plaintiff had filed a grievance, but she also noted that "Inmate Womack has not followed the grievance procedure, has filed grievances out of time and therefore has not exhausted his administrative remedies." (Doc. no. 12, Fields Aff. ¶ 14). As previously noted, put plainly, Plaintiff 'must timely meet the deadlines or the good cause standard of Georgia's administrative grievance procedures.'" Salas, 162 Fed. Appx. at 920.

13

time he tried to submit an informal grievance regarding the assault, the officials would say that he could not file a grievance about the incident because he was given a disciplinary report. This argument is misguided. Plaintiff's claim against Defendant is based on an allegation that Plaintiff told Defendant about threats to Plaintiff by officers, allegedly Defendant did nothing, and as a result, Plaintiff was assaulted by officers at a DRH. The outcome of a disciplinary proceeding is not the issue that Plaintiff must grieve for the purpose of this lawsuit.[9]

In any event, the Court has reviewed all filings in this case and it has not come across a grievance, informal or formal, addressing the purported assault, much less a grievance contending that Defendant should have prevented this purported assault.[10] In fact, other than Plaintiff's complaint and his self serving statements, there is no record or documentation that Plaintiff ever complained that Defendant was deliberately indifferent to Plaintiff's safety.

---

[9] Indeed, there is a separate SOP for appealing disciplinary report determinations. See GDOC SOP IIB02-0001.

[10] Plaintiff directs the Court to his exhibits (doc. no. 19) and claims that they show that once he was transferred from MSP, he exhausted his administrative remedies. A review of his exhibits reveals that on May 29, 2006, Plaintiff wrote a letter to "Ms. Foskey," apparently regarding a denial of an informal grievance 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. (Id., Ex. 5). The grievance was apparently denied because it addressed multiple issues and Plaintiff had exceeded the grievance limit set by the SOP. This letter alludes to an "altercation" - though it does not identify between whom or when. The letter also provides that the altercation was not the crux of the grievance; he merely used the "altercation" as an example. In addition, Plaintiff states, "Nevertheless, the entire context of the 'resolution section' alluded to the accentuated issue - the Captain illegally presiding over the hearing." (Id.). Thus, the only thing exhibit 5 may indicate is that Plaintiff was attempting to grieve the fact that "the Captain illegally" presided over "the hearing." The only other mention of an assault consist of Plaintiff's unsworn self-serving letters/statements in which he makes allegations regarding excessive force, guard brutality, and complains generally about the administrative grievance procedure. (See id., Exs. 7, 14, 15). The Court notes that Ex. 6 is illegible, but it appears to be another unsworn letter/statement made by Plaintiff.

14

In this regard, it is not improper for the Court to demand some evidence beyond Plaintiff's own self-serving statements showing that administrative remedies were not available. In Kozuh v. Nichols, No. 05-15207, 2006 WL 1716049, at *2 (11th Cir. June 22, 2006), the Eleventh Circuit rejected a prisoner's claim "that he was 'thwarted' when officials refused to respond to his grievances, leaving the grievance procedure unavailable." In rejecting Kozuh's argument for lack of evidence, the Eleventh Circuit noted the existence of contrary evidence that "Kozuh was able to file numerous informal complaints." Id. at *3. The instant case is similar. Although Plaintiff maintains otherwise, there is ample evidence in the record from which to conclude that the grievance process was available to Plaintiff. In sum, the Court concludes that Plaintiff failed to comply with § 1997e(a).

## C. Dismissal Should Be Without Prejudice.

As Plaintiff has failed to marshal sufficient evidence to support his assertion that administrative remedies were unavailable, Defendant is entitled to summary judgment.[11] Nevertheless, the Court declines to recommend that the instant case be dismissed with prejudice. Cf. Johnson, 418 F.3d at 1157 (quoting Marsh v. Jones, 53 F.3d 707, 710 (5th Cir. 1995)) ("[w]ithout the prospect of a dismissal with prejudice, a prisoner could evade the exhaustion requirement by filing no administrative grievance or by intentionally filing an untimely one"). It is the practice of the presiding District Judge to dismiss cases such as this one without prejudice, in order that the prisoner-plaintiff may attempt to properly exhaust administrative remedies. Thus, although it is at least arguable that a district court has authority to dismiss a prisoner's claims with prejudice for failure to exhaust administrative remedies, the

---

[11]The Court's conclusion in this regard pretermits consideration of Defendant's remaining arguments and Plaintiff's motion for summary judgment.

Court determines that it would not be appropriate to do so at this time.

### III. CONCLUSION

For the above reasons, the Court **REPORTS** and **RECOMMENDS** that Defendant's motion for summary judgment (doc. no. 12) be **GRANTED** as to exhaustion, that Plaintiff's motion for summary judgment on the merits (doc. no. 23) be **DENIED,** that Plaintiff's complaint be **DISMISSED** without prejudice, and that an appropriate final judgment be **ENTERED** in favor of Defendant.

SO REPORTED and RECOMMENDED this 11th day of July, 2008, at Augusta, Georgia.

_____
W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE